IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TOATUGA M. SAOFAIGAALII, | ) | CIVIL NO. 14-00455 SOM/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

Before the court is Defendant United States' Motion for Summary Judgment on Plaintiff Toatuga Saofaigaalii's claim asserting medical negligence under the Federal Tort Claims Act ("FTCA"). The United States argues that Saofaigaalii's claim is barred by the FTCA's two-year statute of limitations. The United States also contends that it is entitled to summary judgment because Saofaigaalii has not identified any medical expert opinion regarding the relevant standard of care or causation relevant to his medical negligence claim, as required by Hawaii law.

Although Saofaigaalii, who is proceeding pro se from his home in American Samoa, filed no opposition to the United States' motion, this court denies the motion on the ground that

the United States has not met its burden as the movant of showing entitlement to summary judgment.

II.        **BACKGROUND.**

Saofaigaalii is a fifteen-year veteran of the United States Army who served during the Vietnam era.  See ECF No. 1-19, PageID # 40.  He lives in American Samoa but travels to Hawaii periodically to receive medical treatment at Tripler Army Medical Center, a hospital run by the Department of the Army.  See ECF No. 1-1, PageID # 7.

On March 12, 2007, Saofaigaalii sought medical treatment at Tripler to remove a kidney stone.  See ECF No. 43, PageID # 195.  After a first surgery proved unsuccessful, the doctors allegedly recommended a second surgery.  See id. According to a reviewing physician at Tripler, complications arose as the treating physicians tried to administer spinal anesthesia, and spinal anesthesia ended up being attempted six or seven times.  See ECF No. 43-4, PageID # 245.

After the second surgery, Saofaigaalii, although allegedly in "excruciating" pain, was discharged by Tripler.  See id.; see also ECF No. 1-16, PageID #s 33-34.  When the pain did not subside, he went to Tripler's emergency room, but was allegedly only given pain medication and told that the surgery had been a success.  See ECF No. 1-18, PageID # 38; see also ECF No. 1-16, PageID #s 33-34.  Saofaigaalii then returned to his

home in American Samoa.  See ECF No. 1-16, PageID # 34.

Still in pain, Saofaigaalii came back to Oahu and was readmitted to the Tripler emergency room on May 4, 2007.  See ECF No. 43, PageID # 197.  On May 12, 2007, Saofaigaalii met with a Tripler physician, who explained that Saofaigaalii had a spinal infection likely caused by the Tripler urological procedures or the "introduction of skin flora with the spinal anesthesia attempts."  See ECF No. 43-4, PageID # 246.  The physician's attending note states:

> Had long counselling [sic] session with patient and his son today about the likely etiology of the infection in his back, his current treatment, and what the future will hold for his treatment.  He demonstrates excellent insite [sic] into the process and understands where we think he is currently.  All of their questions were answered to their satisfaction.

See id., PageID #s 197-98.

Saofaigaalii met with a Veteran Affairs counselor on September 26, 2007, who provided him with a "21-4138" form for disability compensation benefits pursuant to 38 U.S.C. § 1151.  See ECF No. 1-15, PageID # 32.  Saofaigaalii filed his claim for disability compensation benefits that same day.  See id.  As part of his claim, Saofaigaalii submitted letters by family members alleging that his treating physicians had been negligent.  See ECF No. 1-17, PageID # 37 ("My father has suffered enough and the doctors should be disciplined for their negligence to his

3

case."); ECF No. 1-16, PageID # 35 ("The whole point of my statement is that justice must be carried out and these doctors should be questioned for their negligence [sic] acts because if they had taken precautions then I think nothing would happen at all."); id., PageID # 34 ("After the surgery, [Saofaigaalii] was released right away instead of being admitted to a recovery ward to see how he was reacting to the procedure they did.  I think that this was an act of negligence because it seems that the life of patients were not the priority at this time; the surgeons just wanted to get over it and authorized that he was well enough to go back to the hotel.").

On March 21, 2008, the VA denied Saofaigaalii's claim for disability compensation benefits.  See ECF No. 1-19, PageID # 40.  The decision stated:

> Although Tripler treatment records noted complications resulted from spinal anesthesia for a urological procedure, VA care or lack thereof did not cause your chronic headaches, numbness and pain to both lower extremities, lower back pain, and bacterial infection to the vertebra as a result of spinal anesthesia for kidney stone surgery.
>
> For your information, claims under 38 U.S.C. [§] 1151 apply only to facilities over which the Secretary of the Veterans Affairs has direct jurisdiction.  Tripler Army Medical Center is not considered to be a VA facility for purposes of 38 U.S.C. [§] 1151.

ECF No. 1-20, PageID # 41.  The VA's denial letter invited Saofaigaalii to appeal the decision, stating, "If you do not

4

agree with our decision, you should write us and tell us why. You have one year from the date of this letter to appeal the decision." ECF No. 54-4, PageID # 318. Saofaigaalii, relying on these instructions, filed an appeal with the VA.

On August 12, 2010, when Saofaigaalii was in Hawaii for a medical check up, he stopped by the VA to check on the status of his appeal and was told by a counselor that it had been denied. See ECF No. 1-12, PageID # 27. Saofaigaalii claims that the "V.A. advised me to put my Claim straight to Tripler Hospital." See id.

On October 7, 2010, Saofaigaalii mailed to a Brigadier General assigned to Tripler a letter that summarized his negligence claim against Tripler. See ECF No. 1-10, PageID #s 22-25. When Saofaigaalii received no response, he sent another letter on November 15, 2010. See ECF No. 43, PageID # 198. On March 16, 2011, Saofaigaalii wrote to the VA requesting assistance because he "stilled [sic] not heard of anything from Tripler Army Medical Center." ECF No. 1-9, PageID # 21.

On March 23, 2011, Katharyne Clark,[1] a Judge Advocate assigned to Tripler, wrote a letter to Saofaigaalii, stating that his letters to Tripler had been forwarded to her. See ECF No. 43-3, PageID # 233. Her letter further stated, "In reading your

---

[1] Her declaration indicates that she later changed her name to "Katharyne Proudfoot Morphis." See ECF No. 54-11.

letters, it appears you wish to file a tort claim against the United States.  I have enclosed several blank copies of Standard Form SF-95, Claim for Damage, Injury, or Death." See id.  The letter was allegedly mailed to Saofaigaalii's address in American Samoa sometime around March 23, 2011.  Saofaigaalii's position in this case, including during the hearing on the present motion, is that he never received the letter.

Saofaigaalii alleges that he continued to suffer from the injuries caused by the Tripler procedure and was in a coma from February to March 2013.  See ECF No. 1-4, PageID # 12. According to Saofaigaalii,

> I was in COMA for two (2) months in Tripler Army Medical Center from February thru March 2013.  I was in ICA, and than PROGRESSIVE CARE UNIT, and than to the ward, and than after that, I was transferred to the CFA.  I was Discharged from CFA on October 03, 2013. I returned to Home in American Samoa on October 09, 2013 on Special Flight.  I am not still fully recover for my situations since I was in Hospital.  My conditions is come very slowly to recover from COMA.

Id. (grammar and spelling as in the original).

In September 2013, Saofaigaalii met with a Tripler Medical Claims Judge Advocate, Yvette Soto.  See ECF No. 43-1, PageID # 204.  After discussing the claim with Saofaigaalii, Soto provided him with an SF-95 form.  See id.  Saofaigaalii allegedly mailed the completed SF-95 form to Tripler on September 27, 2013. See ECF No. 43, PageID # 198.  Saofaigaalii backdated the form to

6

October 7, 2010, the date on which he had mailed his first letter to the Brigadier General at Tripler.  <u>See</u> ECF No. 43, PageID # 198.  He hand-delivered another copy of the completed SF-95 form to an employee at Tripler on September 30, 2013.  <u>See</u> ECF No. 43, PageID # 198.

On March 14, 2014, the Tort Claims Division of the Department of the Army denied Saofaigaalii's FTCA claim.  <u>See</u> ECF No. 1-3, PageID # 10.  The basis for the denial was that his claim was barred by the two-year statute of limitations pursuant to 28 U.S.C. § 2401(b).  <u>See id.</u>  Saofaigaalii filed a motion for reconsideration by the Army that was denied on August 19, 2014.  <u>See</u> ECF No. 1-2, PageID # 8.

Saofaigaalii filed his Complaint in this court on October 9, 2014, suing Tripler and the Department of the Army.  <u>See</u> ECF No. 1.  His Complaint alleges that the two medical procedures at Tripler were negligently performed and resulted in his suffering severe injuries, including headaches, numbness and pain in both lower extremities, lower back pain, bacterial infection in his vertebrae, a broken piece of metal left in his kidney or stomach, inability to maintain an erection and painful urination, stress, and emotional distress to himself as well as his family members.  <u>See id.</u>, PageID # 196.

As the United States has previously noted, <u>see</u> ECF No. 25-1, PageID # 111, individual federal agencies cannot be sued

under the FTCA.  Instead, the proper defendant in an FTCA case is the United States.  Indeed, as explained later in this order, the analysis of whether Saofaigaalii's claims have been timely filed may also implicate actions by the VA, which is under the United States' umbrella.

During the present litigation, the United States served a Request for Admissions on Saofaigaalii on September 10, 2015. See ECF No. 43, PageID # 199.  The United States agreed to extend the deadline for Saofaigaalii to respond to November 13, 2015. See id.  On or about November 18, 2015, the United States received a letter from Saofaigaalii, which stated in relevant part:

> I would like to Thank You for your letter was send to me dated on October 06, 2015.  To be honestly to you that I stilled have those two Boxes you had send me.  I have been read and read to understand about all these documents, but stilled no experienced to know anything about Law or Justice System.  That is the reasons why I have not send any respond.
>
> I would like to apologized about my part it is incompleted.  I have seek for someone to help me but I could not find anyone.
>
> Sir, I do not know what else can I do?  Let me know if I can do anything else.

Id., PageID # 200 (grammar and spelling as in the original). Despite further extensions of the deadline, Saofaigaalii has not responded to the United States' RFAs.  See id.

The expert disclosure deadline also passed on January

8

6, 2016.  Saofaigaalii has not filed or served on the United States any expert disclosures pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.  <u>See id.</u>

## III.     STANDARD OF REVIEW.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  <u>See</u> <u>Addisu v. Fred Meyer</u>, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A movant must support his position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at 323.  A moving party without the ultimate

9

burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving

party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

**IV.      ANALYSIS.**

**A.    FTCA Statute of Limitations.**

Under 28 U.S.C. § 2401(b), a claimant has two years from when the FTCA claim accrued to present it to the appropriate agency. See 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in

writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.").

An FTCA claim accrues "when a plaintiff knows that he has been injured and who has inflicted the injury." Winter v. United States, 244 F.3d 1088, 1090 (9th Cir. 2001); see also Hensley v. United States, 531 F.3d 1052, 1057 (9th Cir. 2008) (stating that FTCA claim accrues when plaintiff "knew both the fact of injury and its immediate physical cause" (quoting Dyniewicz v. United States, 742 F.2d 484, 487 (9th Cir. 1984)).

The United States contends that Saofaigaalii's negligence claim was time-barred by the FTCA's statute of limitations. See ECF No. 42, PageID # 171. According to the United States, Saofaigaalii's claim accrued, at the latest, in May 2007, when he was admitted to Tripler for a spinal infection. In support, the United States submits the attending note of a Tripler physician, dated May 12, 2007, which stated that Saofaigaalii was told that his injuries were likely caused by the March 2007 procedures. See ECF No. 43-4, PageID #s 244-50. The attending note stated, "Had long counselling session with patient and his son today about the likely etiology of the infection in his back, his current treatment, and what the future will hold

12

for his treatment.  He demonstrates excellent insite into the process and understands where we think he is currently.  All of their questions were answered to their satisfaction."  ECF No. 43-4, PageID # 240 (grammar and spelling as in the original). Saofaigaalii does not dispute that he knew of his injuries and knew who had inflicted the injuries by at least May 12, 2007. The United States thus argues that the two-year statute of limitations expired on May 12, 2009, well before Saofaigaalii properly presented his claim to the appropriate agency in September 2013.

On the present record, this court cannot conclude that the United States is entitled to judgment as a matter of law based on the FTCA's statute of limitations.  Genuine issues of material fact exist as to whether Saofaigaalii's claim was equitably tolled until September 2013, when he says he first received the SF-95 form, filled it out, and returned it to Tripler.

Until recently, Ninth Circuit case law "ha[d] come to contradictory results" regarding whether the statute of limitations in 28 U.S.C. § 2401(b) was jurisdictional and therefore could not be equitably tolled.  Compare Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996) (holding that "[e]quitable tolling is available for FTCA claims in the appropriate circumstances"), with Marley v. United States, 567

13

F.3d 1030, 1032 (9th Cir. 2009), <u>overruled by</u> <u>Kwai Fun Wong v. Beebe</u>, 732 F.3d 1030 (9th Cir. 2013) (holding "that the statute of limitations in 28 U.S.C. § 2401(b) is jurisdictional and, consequently, equitable doctrines that otherwise could excuse a claimant's untimely filing do not apply").[2]

However, in <u>Kwai Fun Wong v. Beebe</u>, 732 F.3d at 1038, the Ninth Circuit held that, because the two-year statute of limitations was merely a "claims-processing" provision and not a jurisdictional factor, "equitable adjustment of the limitations period in § 2401(b) is not prohibited." The Ninth Circuit's holding was affirmed by the United States Supreme Court last year in <u>United States v. Kwai Fun Wong</u>, 135 S.Ct. 1625, 1638 (2015). Equitable tolling thus is an available defense to the FTCA's statute of limitations.

"Because the FTCA's statute of limitations is not jurisdictional, failure to comply with it is merely an affirmative defense which the defendant has the burden of establishing." <u>Schmidt v. United States</u>, 933 F.2d 639, 640 (8th

---

[2] The Ninth Circuit explained that <u>Marley</u> dismissed <u>Alvarez-Machain</u> as having "no precedential value" because the panel opinion in that case was vacated and the case was taken <u>en banc</u>. <u>Kwai Fun Wong</u>, 732 F.3d at 1035 n.1. But the <u>Alvarez-Machain</u> opinion that was vacated by the <u>en banc</u> decision was a different opinion in the same case. <u>Kwai Fun Wong</u>, 732 F.3d at 1035 n.1. Therefore, the <u>Alvarez-Machain</u> ruling in issue here "was still good law when <u>Marley</u> was decided," and "[t]he result was an intracircuit conflict." <u>Kwai Fun Wong</u>, 732 F.3d at 1035 n.1.

Cir. 1991).  See also Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Fed. R. Civ. P. 8(c).  As the movant for summary judgment on its affirmative defense, the United States must "establish the absence of a genuine issue of fact on each issue material to [the] affirmative defense."  Id. at 1537.

The United States argues, "At summary judgment, if the defendant has established that the claim appears time-barred, the burden shifts to the plaintiff 'to establish that there is a genuine issue for trial because equitable tolling may apply.'" See ECF No. 53, PageID # 291 (citing Martin v. GMAC Mortgage Corp., Civ. No. 11-00118 LEK, 2011 WL 6002617, at *7 (D. Haw. Nov. 30, 2011)).  See also Gross v. Hous. Auth. of the City of Las Vegas, No. 2:11-CV-1602 JCM CWH, 2014 WL 7014466, at *4 (D. Nev. Dec. 11, 2014) ("Once the moving party provides [evidence in support of its affirmative defense], the burden shifts to the nonmoving party to set forth specific facts showing the existence of genuine issues of material fact on the affirmative defense."). The United States further contends that, "Where, as here, the plaintiff entirely fails to respond to the motion for summary judgment, the plaintiff fails to establish a genuine issue for trial, and summary judgment in favor of the defendants is appropriate."  See ECF No. 53, PageID # 291.

"Although the failure of a party to respond to a summary-judgment motion may leave uncontroverted those facts

established by the motion, the moving party still must show that the uncontroverted facts entitle the party to a judgment as a matter of law."  10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2725 (3d ed. 1998).  See, e.g., Maryland v. Universal Elections, Inc., 862 F. Supp. 2d 457 (D. Md. 2012), aff'd on the merits, 729 F.3d 370 (4th Cir. 2013); Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).  "[T]hus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."  10A Federal Practice & Procedure § 2725.  In other words, the lack of opposition by itself does not automatically entitle a movant to summary judgment.

Saofaigaalii did not file a written opposition to the United States' motion, but he did attempt to oppose the motion orally at the hearing.  Although he did not expressly refer to "equitable tolling," he did identify issues of fact as to whether the United States was entitled to judgment as a matter of law regarding its statute of limitations defense.  See Martin, 2011 WL 6002617, at *7 (holding that burden shifts to plaintiff "to establish that there is a genuine issue for trial because equitable tolling may apply").

This court's review of the record, particularly

16

Saofaigaalii's submissions regarding his communications with the VA and the Army, also indicated the existence of factual issues regarding whether Saofaigaalii could or should have presented his FTCA claims sooner than he did. It was those matters in the record that caused the court to inquire into whether federal regulatory obligations imposed on the United States in dealing with claimants like Saofaigaalii had been met. Although Saofaigaalii, proceeding pro se, did not identify these regulations himself, "A court is not confined to the particular propositions of law advanced by the parties on a motion for summary judgment" in deciding whether a movant is entitled to summary judgment. See, e.g., Smith v. Freland, 954 F.2d 343, 348 (6th Cir. 1992) (quoting Ware v. Trailer Mart, Inc., 623 F.2d 1150, 1154 (6th Cir. 1980)). See also 10A Federal Practice & Procedure, § 2725.

This court gave the United States an opportunity to present arguments and evidence relating to the United States' compliance or noncompliance with certain regulatory obligations. See ECF No. 52. The United States used this opportunity, filing a supplemental memorandum and a supplemental concise statement of facts that addressed the issue of equitable tolling. See ECF Nos. 53, 54. Even with the new evidence submitted by the United States, this court concludes that the evidence submitted by Saofaigaalii raises genuine issues of material fact regarding

equitable tolling that preclude an award of summary judgment to the United States.

### 1. An Agency's Failure to Satisfy Regulatory Requirements May Justify Equitable Tolling.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Credit Suisse Sec. (USA) LLC v. Simmonds, 132 S.Ct. 1414, 1419 (2012) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  "Equitable tolling focuses primarily on the plaintiff's excusable ignorance of the limitations period." Lehman v. United States, 154 F.3d 1010, 1016 (9th Cir. 1998).  A statute of limitations is equitably tolled until the plaintiff knew or reasonably should have known of the limitations period. See, e.g., U.S. ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1216 (9th Cir. 1996).

Relevant to the issue of equitable tolling in this case are two federal regulations that govern the VA's handling of a potential FTCA claim.  Under 38 C.F.R. § 14.604(a):

> Each person who inquires as to the procedure for filing a claim against the United States, predicated on a negligent or wrongful act or omission of an employee of the Department of Veterans Affairs acting within the scope of his or her employment, will be furnished a copy of SF 95, Claim for Damage, Injury, or Death.  The claimant will be advised to submit the executed claim directly to the Regional Counsel having jurisdiction of the area wherein the occurrence complained of

> took place.  He or she will also be advised
> to submit the information prescribed by 28
> CFR [§] 14.4 to the extent applicable.  If a
> claim is presented to the Department of
> Veterans Affairs which involves the actions
> of employees or officers of other agencies,
> it will be forwarded to the Department of
> Veterans Affairs General Counsel, for
> appropriate action in accord with 28 CFR
> [§] 14.2.

38 C.F.R. § 14.604(a).

The "very purpose" of section 14.604(a) is "to ensure

that a non-lawyer such as the plaintiff is informed, when

appropriate, of timing and filing requirements for claims against

the VA." Jackson v. United States, 488 F. Supp. 2d 191, 195-96

(N.D.N.Y. 2007) (citation omitted).

Section 14.604(a) refers in the above-quoted language

to 28 C.F.R. § 14.2, which provides:

> When a claim is presented to any other
> Federal agency, that agency shall transfer it
> forthwith to the appropriate agency, if the
> proper agency can be identified from the
> claim, and advise the claimant of the
> transfer.  If transfer is not feasible the
> claim shall be returned to the claimant.  The
> fact of transfer shall not, in itself,
> preclude further transfer, return of the
> claim to the claimant or other appropriate
> disposition of the claim.

28 C.F.R. § 14.2.

There is a considerable body of cases in which an FTCA

claim has been equitably tolled because of the VA's, or another

federal agency's, failure to comply with its legal duties under

38 C.F.R. § 14.604 or 28 C.F.R. § 14.2.

19

In Glarner v. United States, Department of Veterans

Administration, 30 F.3d 697, 699 (6th Cir. 1994), the federal

district court recognized that an FTCA action against the VA was

equitably tolled when the VA failed in its duty to provide a copy

of the SF-95 form to Glarner, who instead was directed to file a

disability benefits claim under 38 U.S.C. § 1151. However, the

district court ultimately dismissed the FTCA claim, finding that,

more than two years before he filed his FTCA claim, Glarner had

known or should have known that he needed to file an SF-95, given

the VA's denial of his disability compensation benefits claim.

Id. at 699-700. The Sixth Circuit reversed, explaining:

> Contrary to the district court, we believe
> that the denial letter did not give Glarner,
> a non-lawyer, notice that he needed to fill
> out an SF95 (or equivalent) to make out a
> tort claim. While a skilled lawyer should
> have known as much, Glarner reasonably
> believed that all the claims he could make
> were being processed. Proceeding pro se,
> Glarner wrongly assumed that he had filed the
> appropriate claims, but 38 C.F.R. § 14.604(a)
> mandates that veterans not remain so
> uninformed.

Id. at 702.

This court notes that other district courts have

examined VA actions analogous to those before this court. In

James v. United States, No. 99 CIV. 4238 BSJ, 2000 WL 1132035

(S.D.N.Y. Aug. 8, 2000), the district court held that the statute

of limitations was equitably tolled because the VA had not given

the plaintiff an SF-95 form or instructed him on how to properly

file his claim.  See id., at *3 (finding that "the VA had a duty to provide plaintiff with an SF 95 when VA officials learned of his claims and that their failure to do so tolled the statute" (citing Glarner, 30 F.3d at 701)).

The United States argued in James that "plaintiff's allegations are that he merely told his 'story' to two VA officials and that such allegations fall short of triggering § 14.604(a) because plaintiff does not specifically allege that he inquired as to the procedure for filing a claim against the United States."  2000 WL 1132035, at *3.  The district court rejected this argument, explaining,

> I do not read § 14.604(a) to require plaintiff to utter any magic words when alerting the VA to his claims.  Such an overly technical application of the regulation would defeat its very purpose, which is to ensure that a non-lawyer such as the plaintiff is informed, when appropriate, of timing and filing requirements for claims against the VA.  I find that implicit in plaintiff's complaints to various VA officials was an expression by plaintiff of his desire to learn what his options were, and plaintiff's numerous interactions with VA officials should have indicated to the VA his desire to file a claim.

Id.  "As a matter of fairness," the court concluded "that the VA's failure to furnish plaintiff with an SF 95 and instructions on how to file his claim, in light of § 14.604(a), constitutes extraordinary circumstances sufficient to entitle plaintiff to the benefit of the equitable tolling doctrine."  Id., at *4.

Similarly, in Jackson, a veteran and his wife contacted the VA to file a claim regarding injuries the veteran allegedly suffered as a result of VA medical care.  488 F. Supp. 2d at 192. The VA provided the plaintiffs with a claim form for disability compensation benefits under 38 U.S.C. § 1151, but never informed them about the existence of the FTCA or the SF-95 form.  Id. at 193.  The United States argued that the VA had no duty under 38 C.F.R. § 14.604 to provide the plaintiffs with an SF-95 form because they had not expressly stated their intention to file a negligence claim against the United States.  This argument was rejected by the court, which explained:

> As the district court stated in James:  "I do not read § 14.604(a) to require plaintiff to utter any magic words when alerting the VA to his claims.  Such an overly technical application of the regulation would defeat its very purpose, which is to ensure that a non-lawyer such as the plaintiff is informed, when appropriate, of timing and filing requirements for claims against the VA."  Id. at *3.  This Court agrees that claimants . . . should not be required to recite some special incantation prior to being informed of the proper procedure for seeking relief pursuant to the statutes and regulations. Indeed, there should be no shibboleth to identify FTCA claimants in cases like the one at bar.  See Glarner, 30 F.3d at 702 ("Proceeding pro se, [Plaintiff] wrongly assumed that he had filed the appropriate claims, but 38 C.F.R. § 14.604(a) mandates that veterans not remain so uninformed."

Jackson, 488 F. Supp. 2d at 195-96.  The court ruled that equitable tolling applied because the plaintiffs "had neither

22

actual nor constructive knowledge of the filing requirement (until meeting with [an attorney]).” Id. at 197.  The court considered the plaintiffs’ ignorance of the filing requirements, including the statute of limitations, to have been “reasonable given the duty of the VA to inform [them]--and the VA’s subsequent failure to so notify.” Id.  The court also noted that the plaintiffs had been “diligent in prosecuting [their] claim and rights,” and that the United States faced no prejudice by the tolling of the claim.  Id.

Casey v. United States, 161 F. Supp. 2d 86 (D. Conn. 2001), is another case in which the statute of limitations for filing an FTCA claim was equitably tolled given a VA benefits counselor’s failure to provide proper guidance about the FTCA’s filing requirements.  The court noted, “At no point during [its] discussions with the plaintiff did any VA employee tell him how to file a claim against the government, provide the proper forms to him, or direct him to available resources to help him file suit against the United States.” Id. at 89.  The court agreed with the reasoning in Glarner and James “that when VA officials knew that a claimant wanted to file a tort claim against the government, the failure to provide SF 95 to him violated a duty owed to the claimant.”  The statute of limitations in Casey was therefore tolled “until plaintiff reasonably became aware of the filing requirements.” Id. at 95-96.

In <u>Bartus v. United States</u>, 930 F. Supp. 679 (D. Mass. 1996), the United States filed a motion to dismiss on the basis that the veteran plaintiff had failed to timely file an administrative claim pursuant to the FTCA.  The court noted that "Bartus intended to file a negligence claim for damages under the FTCA.  But heeding the benefit counselor's instructions, Bartus instead filled out a § 1151 form for disability benefits" that was denied twenty-two months later.  <u>Id.</u> at 680.  Realizing then that he had filed the wrong form, Bartus tried to proceed with the proper FTCA form, but the VA denied his claim as time-barred. <u>Id.</u>  The court denied the motion to dismiss, holding that the statute of limitations for Bartus's FTCA claim was equitably tolled from the date he filed a disability benefits claim form based on the advice of the VA benefits counselor until the date of the denial, which finally put him on notice that he should have filed an FTCA claim.  <u>Id.</u> at 683.  The court observed that "the VA arguably holds a duty to train its benefits counselors to provide, or at least refer parties to someone who can provide, the appropriate form to veterans contemplating a negligence suit against the Government."  <u>Id.</u> at 682.  "At the very least, this regulation, taken in light of all the facts, which must be construed in plaintiff's favor, is a factor to be considered in the decision to apply equitable tolling here."  <u>Id.</u>  The court added, "It would be distinctly unfair to allow this bureaucratic

24

snafu to foreclose plaintiff's claim" when he did not have actual
or constructive knowledge of the FTCA's filing requirements, he
diligently pursued his rights, he reasonably remained unaware of
proper FTCA procedures until the VA denied his § 1151 claim, and
the VA was not prejudiced by his being allowed to move forward
with his case.  Id. at 682-83.

        The VA regulations evidence a policy of assisting
veterans who seek to make claims.  That federal policy is not
confined to the VA.  In Perez v. United States, 167 F.3d 913 (5th
Cir. 1999), a belly dancer sued the United States under the FTCA
for injuries she sustained when a Texas National Guard's armored
personnel carrier struck a pole that knocked her unconscious.
Perez filed a state court action, but was later advised that the
guardsmen had been acting as employees of the federal government
when the incident happened.  Id. at 915.  When Perez later filed
a claim with the United States Army, it denied the claim, citing
the two-year statute of limitations under 28 U.S.C. § 2401(b).
Id.  The district court refused to apply equitable tolling and
dismissed her suit, finding that she "had failed to investigate
the nature of her claim diligently, and thus failed to recognize
that the Texas National Guard has a dual nature, sometimes
serving the federal government and sometimes serving the state."
Id.

        The Fifth Circuit reversed, explaining that the

National Guard, like the VA in <u>Glarner</u>, had failed to satisfy its legal duty to the claimant to furnish the appropriate form and forward an improperly presented claim if necessary.  <u>Id.</u> at 918. The court explained that, because "there is a clear causal connection between the government's failure to follow its regulations and the plaintiff's filing of an improper complaint," equitable tolling was appropriate to "prevent [Perez] from unjustly losing a claim vigorously pursued."  <u>Id.</u> at 919.

　　　With the above cases in mind, this court turns to the issue of whether there is a genuine issue of fact in the present case concerning the VA's discharge of its legal duty under 38 C.F.R. § 14.604 to provide Saofaigaalii with an SF-95 form and appropriate guidance regarding the filing of an FTCA claim.  <u>See</u> <u>Glarner</u>, 30 F.3d at 701; <u>see also</u> 38 C.F.R. § 14.604(a) ("Each person who inquires as to the procedure for filing a claim against the United States, predicated on a negligent or wrongful act or omission of an employee of the Department of Veterans Affairs acting within the scope of his or her employment, will be furnished a copy of SF 95, Claim for Damage, Injury, or Death.").

### 2.   There Are Questions of Fact About Whether and/or When the VA and/or the Army Satisfied Their Regulatory Obligations.

　　　The United States does not dispute that, when Saofaigaalii met with a VA counselor about a claim, he was provided with a "21-4138" form and advised to file a claim for

disability compensation benefits under 38 U.S.C. § 1151.  See ECF No. 1-4, PageID # 12.  The United States contends that no duty under 38 C.F.R. § 14.604(a) was triggered because Saofaigaalii's "claim for disability benefits includes no allegations or implications of negligence or wrongdoing."  See ECF No. 53, PageID # 293.

        The record, taken in the light most favorable to Saofaigaalii, raises a factual question about whether the VA should have discussed a negligence claim in Saofaigaalii's submissions.  Saofaigaalii's claim included statements by family members complaining that his treating physicians had been negligent.  See ECF No. 1-17, PageID # 37 ("My father has suffered enough and the doctors should be disciplined for their negligence to his case."); ECF No. 1-16, PageID # 35 ("The whole point of my statement is that justice must be carried out and these doctors should be questioned for their negligence [sic] acts because if they had taken precautions then I think nothing would happen at all."); id., PageID # 34 ("After the surgery, [Saofaigaalii] was released right away instead of being admitted to a recovery ward to see how he was reacting to the procedure they did.  I think that this was an act of negligence because it seems that the life of patients were not the priority at this time; the surgeons just wanted to get over it and authorized that he was well enough to go back to the hotel.").  These statements,

combined with Saofaigaalii's statement that he "endured multiple

punctures into my spine for anesthesia purposes" that resulted in

a bacterial infection, chronic headaches, and numbness and pain

to his lower extremities, create a question of fact as to whether

the VA was or should have been on notice of Saofaigaalii's

potential negligence claim under the FTCA.

Saofaigaalii's response to the VA's denial decision

could also be read as indicating that his claim was predicated on

negligence.  In a letter to the VA dated September 2, 2008, he

wrote,

> The Reasons for all of these, because I am
> getting Sicking tired of People being cover-
> Up on all these Doctors' Mistakes and Un-
> Professional Practice on my body.  Also, I
> will request this High Court of Veterans
> Appeal to send me to the Specialist Doctors
> to take my Complete Physical Examination and
> check all these faults cause by Doctors.

ECF No. 54-5, PageID # 321 (grammar and spelling as in the

original).

Although the United States is correct that not all

disability benefits claims under § 1151 give rise to a legal duty

to provide an SF-95 form, the plain language of 38 C.F.R.

§ 14.604 does not limit the VA to furnishing an SF-95 form only

when a claimant expressly states an intent to file a negligence

claim against the United States.  Jackson in fact rejected this

very argument.  See 488 F. Supp. 2d at 195-96.  Like the court in

Jackson, this court reads 38 C.F.R. § 14.604 as imposing a duty

28

on the VA to furnish a claimant with an SF-95 form when the VA
knows or should know that a claim is or may be predicated on the
alleged negligence of a United States employee, even when this is
only implied or can only be inferred from the claimant's
inquiries to the VA.  This is consistent with the VA's own
assurance to Saofaigaalii that it considered "all claims we
understood to be specifically made, implied, or inferred in that
claim."  See ECF No. 54-4, PageID # 318.  Given the allegations
and evidence that Saofaigaalii included when he filed his
disability benefits claim, and the VA's own acknowledgment that
it had to consider all implied claims, a triable issue of fact
exists as to whether the VA should have known that Saofaigaalii
was attempting to assert a claim predicated on VA negligence.

        The United States argues, "At the earliest, Plaintiff
presents facts which suggest a claim of negligence in his August
25, 2008 letter, but here too he does not request any information
about filing procedures."  ECF No. 53, PageID # 293.  But the VA
may have contributed to Saofaigaalii's silence about FTCA filing
procedures in his August 2008 letter.  In a letter dated March
21, 2008, the VA explained its denial of his claim, stating, "If
you do not agree with our decision, you should write us and tell
us why.  You have one year from the date of this letter to appeal
the decision."  ECF No. 54-4, PageID # 318.  Arguably, it was
reasonable for Saofaigaalii to rely on the VA's guidance by

proceeding with an appeal from the VA's denial of disability compensation benefits.  Because the record can be viewed as at least suggesting that the VA's own advice led Saofaigaalii to not affirmatively inquire about how to proceed with a negligence claim, summary judgment is not warranted.

James provides further support for recognizing that questions of fact exist.  The James court noted that section 14.604(a) does not require the plaintiff "to utter any magic words when alerting the VA to his claims.  Such an overly technical application of the regulation would defeat its very purpose, which is to ensure that a non-lawyer such as the plaintiff is informed, when appropriate, of timing and filing requirements for claims against the VA."  2000 WL 1132035, at *3. The James court concluded that "implicit in plaintiff's complaints to various VA officials was an expression by plaintiff of his desire to learn what his options were, and plaintiff's numerous interactions with VA officials should have indicated to the VA his desire to file a claim."  Id.

This court also notes that the VA's duty under 38 U.S.C. § 14.604(a) was not negated by any mistake by Saofaigaalii as to whether it was a VA employee who had allegedly provided negligent medical care.  The duty under 38 U.S.C. § 14.604(a) is triggered when a claimant inquires about asserting a claim predicated on the alleged negligence of a VA employee; the duty

30

does not evaporate when the VA concludes that any negligence is attributable to someone outside the VA.  In Saofaigaalii's statement in support of his claim, he made clear that he believed his injuries resulted from VA care.  See ECF No. 1-15, PageID # 32.  The VA's position that any negligence was attributable to the Army, not the VA, does not mean the VA owed Saofaigaalii no duty.

The VA owed an additional duty under 38 C.F.R. § 14.604(a), if it became clear to the VA that Saofaigaalii was seeking to assert a claim that "involve[d] the actions of employees or officers of other agencies."  38 C.F.R. § 14.604(a).  Such a claim was required to "be forwarded to the Department of Veterans Affairs General Counsel, for appropriate action in accord with 28 CFR [§] 14.2."  Id.  The VA took the position that it had no liability for disability compensation benefits under § 1151 because Tripler is "not considered to be a VA facility for the purposes of 38 U.S.C. § 1151," and, therefore, Saofaigaalii's injuries "were not actually the result of VA care."  ECF No. 1-19, PageID # 41.  If the VA determined that what Saofaigaalii was claiming "involve[d] the actions of employees or officers of other agencies," the VA had a legal duty to either furnish Saofaigaalii with an SF-95 form, or to forward his claim to the appropriate agency.  Nothing in the record indicates that the VA did either.

Given the evidence in the record regarding the VA's conduct, questions of fact exist about whether the United States satisfied its obligations to Saofaigaalii.  There is evidence in the record suggesting that Saofaigaalii neither knew nor should have known of the FTCA's filing requirements before September 2013.  See, e.g., U.S. ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1216 (9th Cir. 1996) ("Under equitable tolling, courts toll the running of the statute of limitations until the plaintiff knew or reasonably should have known of the facts underlying his cause of action.").

Thus, for example, nothing in the record suggests that Saofaigaalii knew or should have known that he had to file an FTCA claim when the VA denied his disability compensation benefits claim.  In this respect, Saofaigaalii is unlike the veteran in Bartus, who, according to the Massachusetts federal district court, "realized he had filed the wrong claim form" when he learned that the VA had denied his disability benefits claim. 930 F. Supp. at 680.  Bartus had been told that the VA was writing new regulations, given a decision by the Court of Veterans Appeals voiding existing VA regulations "concerning tort claims for claims filed as a result of a disability which was incurred or aggravated during VA-authorized medical examinations, treatment or vocational rehabilitation."  Id.  Saofaigaalii had no equivalent suggestion that a tort claim might be in issue.

32

On August 12, 2010, Saofaigaalii met with a VA counselor, who informed him that his appeal had been denied and allegedly "advised [Saofaigaalii] to put [his] Claim straight to Tripler Hospital."  See ECF No. 1-12, PageID # 27.  However, the VA counselor's statement was not sufficient to satisfy the VA's duty under 38 C.F.R. § 14.604(a).  There is no indication that the counselor provided Saofaigaalii with an SF-95 form or explained the requirements for asserting an FTCA claim.  The record suggests otherwise, as Saofaigaalii appears to have attempted to follow the counselor's threadbare advice by sending a letter to the Brigadier General at Tripler that did not comply with the FTCA's presentment requirements.  See ECF No. 1-10, PageID # 22.

The United States argues that, even if tolling applies, it must end on or around March 24, 2011, when the Medical Claims Judge Advocate at Tripler mailed an SF-95 form to Saofaigaalii's American Samoa address.  See ECF No. 53, PageID # 293.  According to the United States, "the March 24, 2011 letter satisfied the government's obligation, in that it gave clear instructions on how to file an FTCA claim and provided blank SF-95 forms to Plaintiff."  Id., PageID # 294.  If, as the United States argues, Saofaigaalii received the form in late March or early April of 2011, the statute of limitations would have run from then to late March or early April of 2013.  This would mean that

33

Saofaigaalii's presentment of his completed SF-95 to Tripler in September 2013 would have been untimely.  See ECF No. 43, PageID # 198.

    To establish that Saofaigaalii received the letter and therefore knew of the FTCA's limitations period, the United States urges this court to apply the common law "mailbox rule." The common law mailbox rule provides that "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." Hagner v. United States, 285 U.S. 427, 430 (1932).

    Even if the mailbox rule were applicable, it would not establish that Saofaigaalii knew or reasonably should have known of the FTCA's limitations period because of the Judge Advocate's letter.  The mailbox rule only creates a presumption of receipt. However, Saofaigaalii has rebutted this presumption.  At the hearing on the present motion, he stated clearly that he never received the letter.  While his unsworn statement is not in admissible format, this court may consider the statement at summary judgment.  The Ninth Circuit has held that a district court may consider an unsworn statement if the same statement could obviously be presented in admissible form at trial.  See Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003); see also Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir.

2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Fed. R. Civ. P. 56." (citation omitted)).  At trial, Saofaigaalii himself could testify to what he says is his nonreceipt of the letter.

In addition, the record taken in the light most favorable to Saofaigaalii supports his statement that he never received the March 2011 letter.  There is no certified mail receipt signed by Saofaigaalii evidencing his actual receipt of the letter.  The record also shows that, around the time the letter was mailed, Saofaigaalii was traveling back and forth from American Samoa to Hawaii for treatment and spending significant periods of time at Tripler and other hospitals on Oahu.  See ECF No. 1-4, PageID # 12.  It is not clear whether the certified letter could have been left in his mailbox in American Samoa in his absence, or whether the mail carrier might have held it at the post office.  In addition, the Judge Advocate who met with Saofaigaalii in 2013 regarding his claim stated that "Plaintiff clarified that he had first received the SF-95 in September 2013."  ECF No. 43-1, PageID # 205.  The United States in fact cited this statement in its own separate and concise statement of facts.  See ECF No. 43, PageID # 199.  Given this evidence, a genuine issue of material fact exists as to whether Saofaigaalii received the letter and the blank SF-95 form in late March or

35

early April 2011.

Even if Saofaigaalii did receive the letter, this by no means establishes that Saofaigaalii should have reasonably known how to adequately and timely file his FTCA claim.  Like the VA, the Department of the Army must adhere to federal requirements regarding its handling of claims.  See 32 C.F.R. § 536 et seq. One such regulation, 32 C.F.R. § 536.28, provides:

> Claims personnel will acknowledge all claims immediately upon receipt, in writing, by telephone, or in person.  A defective claim will be acknowledged in writing, pointing out its defects.  Where the defects render the submission jurisdictionally deficient based on the requirements discussed in DA Pam 27-162, paragraphs 2-5 and 2-6, the claimant or attorney will be informed in writing of the need to present a proper claim no later than two years from the date of accrual.

32 C.F.R. § 536.28.  In her letter, the Judge Advocate did not inform Saofagaalii of the need to present a proper claim within two years.  She did include the SF-95 form, which refers to "DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT."  The SF-95 form also says, "THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES."  (Emphasis and bold in the original). But the fine print would not necessarily have placed Saofaigaalii on notice to timely file his claim.  Indeed, had Saofaigaalii read and understood the SF-95 form, he could have logically

36

assumed that it was too late in 2011 to file a claim based on injuries he allegedly suffered in 2007.  That is, the fine print in the SF-95 form could have put him on notice that filing the claim at that point was futile.

Nothing else in the form indicated that he could still present a viable claim outside this two-year window.  Nor did the Judge Advocate provide any further guidance in her letter to Saofaigaalii that would have notified him of how to properly file his FTCA claim, or the possibility that he could still file a valid claim.

The United States submits that any duty any federal agency had was satisfied by the mailing of the Judge Advocate's letter, regardless of whether or not Saofaigaalii ever received it.  According to the United States,

> the equitable basis of the tolling is that the VA failed in a legal duty to plaintiff. Glarner, 30 F.3d at 701.  Even assuming that Plaintiff did not receive the March 24, 2011 letter by some unknown misfortune, the legal duty owed to Plaintiff was satisfied on March 24, 2011 when Ms. Morphis sent by Certified Mail instructions to file a claim and the blank SF-95.  As a result, the basis for the equitable tolling no longer existed as of March 24, 2011, and all delay thereafter is chargeable to Plaintiff.

ECF No. 53, PageID # 295.  The United States provides no legal authority in support of this argument.  The regulatory requirements are intended to ensure that a claimant unfamiliar with the filing requirements is able to receive the proper

guidance and forms from the appropriate agencies, which are charged with being knowledgeable about the FTCA.  See Jackson, 488 F. Supp. 2d at 195-96 (The "very purpose [of 38 C.F.R. § 14.604] is to ensure that a non-lawyer such as the plaintiff is informed, when appropriate, of timing and filing requirements for claims against the VA." (citation omitted)).

Moreover, because the Judge Advocate was a Department of Army employee, not a VA employee, the applicable regulation governing her letter was 32 C.F.R. § 536.28, not 38 C.F.R. § 14.604.  The focus of 32 C.F.R. § 536.28 is the need for Army claims personnel to ensure that a claimant recognizes FTCA requirements.  The regulation is not aimed at the mere transmission of notice.  After all, 32 C.F.R. § 536.28 requires claims personnel to "acknowledge all claims immediately upon receipt, in writing, by telephone, or in person," to acknowledge a defective claim in writing, and to "inform" a claimant or attorney in writing when the defects in a claim render its submission jurisdictionally deficient.  Of course, the Army had no duty to acknowledge a claim or a claim's defects before the claim was filed, but the clear spirit of 32 C.F.R. § 536.28 is to actively inform a claimant, not just to mail forms.

There is a further reason this court cannot rule as a matter of law that Saofaigaalii's September 2013 presentment of his claim was time-barred, even if he received the Judge

38

Advocate's letter in March 2011.  The record shows that Saofaigaalii fell into a coma just before the two-year statute of limitations would have lapsed had it been triggered by the letter dated March 23, 2011.  According to Saofaigaalii,

> I was in COMA for two (2) months in Tripler Army Medical Center from February thru March 2013.  I was in ICA, and than PROGRESSIVE CARE UNIT, and than to the ward, and than after that, I was transferred to the CFA.  I was Discharged from CFA on October 03, 2013. I returned to Home in American Samoa on October 09, 2013 on Special Flight.  I am not still fully recover for my situations since I was in Hospital.  My conditions is come very slowly to recover from COMA.

ECF No. 1-4, PageID # 12 (grammar and spelling as in the original).

Other courts have understandably found a coma to be an "extraordinary circumstance" that can equitably toll a limitations period.  See, e.g., Moses v. Westchester County Dept. of Corr., 951 F. Supp. 2d 448, 454 (S.D.N.Y. 2013); Eber v. Harris County Hosp. Dist., 130 F. Supp. 2d 847, 867 (S.D. Tex. 2001) ("Under the circumstances, equitable tolling would appear to be appropriate for the time period Eber was in a coma."); Clifford v. United States, 738 F.2d 977, 980 (8th Cir. 1984) (tolling statute of limitations when alleged malpractice caused coma).

The record indicates that Saofaigaalii was transferred to different care facilities after his coma and only discharged

in October, 2013.  It is unclear on the present record whether Saofaigaalii's medical condition justifies tolling the limitations period until the date he filed his claim.

The United States may find evidence that Saofaigaalii was indeed able to file his claim at some point before his September 2013 presentment.  But on the present record, this court concludes that, even assuming the limitations period began to run in late March or early April 2011, there is a genuine issue of material fact as to whether "extraordinary circumstances" prevented Saofaigaalii from timely filing his claim by late March or early April 2013.

The record shows that Saofaigaalii routinely acted with promptness to comply with instructions and meet deadlines when informed of them.  When provided with a disability compensation benefits form on September 26, 2007, Saofaigaalii completed it that very day.  He timely appealed the VA's denial of benefits. Informed on August 12, 2010, by the VA to file any claim with Tripler, he sent a letter to the Brigadier General within less than sixty days, and followed up with another letter a month later.  He was given an SF-95 form during a meeting with Judge Advocate Soto in September 2013 and mailed the completed form on September 27, 2013, delivering another copy of the completed form in person on September 30, 2013.  Ignoring a letter mailed in March 2011 for two years would have been a departure from his

practice.

In summary, the court concludes that the evidence, viewed in the light most favorable to Saofaigaalii, raises genuine issues of material fact as to whether Saofaigaalii's claim should be equitably tolled until September 2013. Saofaigaalii has provided some evidence that he "exercis[ed] due diligence" in attempting to file a claim with the VA within a few months of the medical procedure on March 12, 2007.  See Kwai Fun Wong, 732 F.3d at 1052.  See ECF No. 1-19, PageID # 40.  Indeed, he continued to communicate with the VA and later with Tripler about his concerns.  This court cannot say that there is no factual issue as to whether Saofaigaalii had actual or constructive knowledge of the filing requirement before his meeting with the Judge Advocate in September 2013.  See Jackson, 488 F. Supp. 2d at 197. There is a triable issue as to whether Saofaigaalii's ignorance of the filing requirements, including the statute of limitations, "was reasonable given the duty of the VA to inform him--and the VA's subsequent failure to so notify." Id.  Similarly unclear on the present record is whether the United States' failure to properly advise Saofaigaalii of the FTCA's requirements contributed to the timing of his submission of his FTCA claim.

This court also notes that the tolling of the claim does not appear to impose any prejudice on the United States.

41

Saofaigaalii raised his medical concerns promptly with the VA, which was able to properly investigate Saofaigaalii's condition with his full cooperation.

Even if there is potential prejudice to the United States, it could arguably have been avoided if the VA had promptly forwarded the claim to the Department of the Army, or counseled Saofaigaalii early on to fill out and send an SF-95 form to the Department of the Army, and if the Department of the Army had then investigated Saofaigaalii's claim earlier.

As this court has already noted, the "very purpose [of 38 C.F.R. § 14.604] is to ensure that a non-lawyer such as the plaintiff is informed, when appropriate, of timing and filing requirements for claims against the VA." Jackson, 488 F. Supp. 2d at 195-96 (citation omitted). The existence of regulations such as 38 C.F.R. § 14.604 underscores the VA's own recognition of the complexity and potential confusion facing a person who wants to assert a tort claim against the United States. These regulations require federal agencies and their counselors to be familiar with the basic requirements of the FTCA and to be responsible for notifying claimants when it appears that they are trying to file claims under the FTCA. If, as Saofaigaalii alleges, the United States was negligent in treating him, it would work a serious injustice if a possible failure by the United States to comply with its regulatory duties prevented

Saofaigaalii from seeking fair compensation for the allegedly negligent medical care.

## B.   The United States' Remaining Arguments.

The United States asserts two other arguments in favor of summary judgment.  First, the United States argues that all the statements in its First Request for Admissions must be deemed admitted by Saofaigaalii because he failed to respond to the RFA.  See ECF No. 42-1, PageID #s 183-84.  Second, the United States notes that Saofaigaalii has failed to identify a medical expert for his medical negligence claim, and, therefore, cannot prove the essential element of causation.  See id., PageID #s 191-93.

The FTCA provides that the United States is subject to suit "in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Accordingly, Hawaii law on medical negligence is controlling.  The United States is correct that "the question of negligence must be decided by reference to relevant medical standards of care, for which the plaintiff carries the burden of proving through expert medical testimony."  See ECF No. 42-1, PageID # 191.  See, e.g., Craft v. Peebles, 78 Haw. 287, 298, 893 P.2d 138 (1995) ("It is well settled that in medical malpractice actions, the question of negligence must be decided by reference to relevant medical standards of care for which the plaintiff carries the burden of proving through expert medical testimony."); Carr v. Strode, 79

Haw. 475, 485 n.6, 904 P.2d 489 n.6 (1995) (same).  "Under

Hawaiian law, the plaintiff in a medical malpractice action must

show causation through expert testimony."  Domingo v. T.K., 289

F.3d 600, 607 (9th Cir. 2002).

The deadline for expert disclosures was December 7,

2015, but Saofaigaalii has not served on the United States any

initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), or any

expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2).  Nor has

Saofaigaalii sought an extension of either deadline.

With regard to the issue of the RFA, the United States

gave Saofaigaalii numerous opportunities to provide responses,

and it extended the deadline more than once, but Saofaigaalii

could only respond, "I would like to apologized about my part it

is incompleted.  I have seek for someone to help me but I could

not find anyone."  See ECF No. 42-1, PageID # 180.  At the

hearing, Saofaigaalii represented that he contacted several

attorneys, but none would accept his case because they believed

that the statute of limitations had expired.  The United States

also stated at the hearing that there would be no prejudice to

allowing Saofaigaalii time to seek and disclose a medical expert

and respond to its request for admissions.  Given these

circumstances, this court declines to grant summary judgment

based on these two grounds.  The present order may assist

Saofaigaalii in obtaining an attorney, and this court will allow

Saofaigaalii to seek an attorney who may be able to advise him regarding his negligence claim and argue for an extension of the relevant deadlines.

Court staff contacted a Honolulu attorney who advertises Samoan language ability, but that attorney unfortunately did not agree to represent Saofaigaalii. This court is in the process of trying to establish a formal program in which pro bono counsel will represent parties who otherwise proceed pro se. That program is months away from commencing so, in the meantime, Saofaigaalii himself should consider reaching out to attorneys in light of this order. This court sets a status conference for July 18, 2016, at 9:00 a.m., to discuss the situation. Saofaigaalii may participate by telephone.

**V.        CONCLUSION.**

For the reasons set forth above, the court denies the United States' motion for summary judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 23, 2016.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

Saofaigaalii v. Tripler Army Medical Center, et al., Civ. No. 14-00455 SOM/KSC; ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT